UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-211 |
| v. | * | SECTION: "D" |
| KEITH WILKINSON, RPh | * | |

\* \* \*

## FACTUAL BASIS

Should this matter proceed to trial, the United States would prove beyond a reasonable doubt, through credible testimony and reliable evidence, the following facts:

I. **INTRODUCTION AND OVERVIEW**

Beginning in 2014, Drug Enforcement Administration (DEA) agents began conducting an investigation of Wilkinson Family Pharmacy (WFP), 3001 Paris Road, Chalmette, Louisiana, and Keith **WILKINSON (WILKINSON)**.

Supporting the conspiracies charged in Counts 1 and 2 of the Bill of Information are the below listed overt acts of defendant **WILKINSON** and co-conspirators, including some staff members of WFP, physicians operating outside the scope of professional practice ("pill mill" doctors), certain medical staff involved in prescription forgery, and certain principals of a pharmaceutical distributor, amongst others.

WFP was at all times owned by **WILKINSON**. He hired staff including other pharmacists and pharmacy technicians and worked with others not employed by WFP to support his illegal

dispensing of Schedule II controlled dangerous substances (CDS) outside the scope of professional practice and not for a legitimate medical purpose.

Specific investigative information developed in this case by the DEA established that beginning at a time unknown but prior to 2014 **WILKINSON** and others conspired to illegally dispense quantities of CDS (Count 1) outside the scope of professional practice and not for a legitimate medical purpose.

II. **MONEY LAUNDERING**

This DEA investigation also established that **WILKINSON** and others did knowingly engage, attempt to engage and aid and abet others in engaging in monetary transactions by, through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, he transferred funds from Merrill Lynch investment accounts to other financial accounts, such funds having been derived from a specified unlawful activity, that is, the charged conspiracy to illegally dispense controlled substances.

Specifically, the money transactions engaged in by **WILKINSON** are listed below and show an amount of money for each transaction in excess of $10,000 where these funds were transferred from Merrill Lynch accounts to other financial accounts with an effect on interstate commerce.

| Money Coming Out Of Merrill Lynch Accounts | Dollar Amount And Date Wired | Money Going Into Other Financial Accounts |
|---|---|---|
| Merrill Lynch Account for Keith Wilkinson, Account #594-02890 | $30,000.00 wired on 5/09/2017 | Merrill Lynch account for 521 Plan College Savings, account #594-30351 |
| Merrill Lynch Account for Keith Wilkinson, Account #594-02890 | $83,462.11 wired on 5/9/2017 | Merrill Lynch account for loan payoff, account #594-28880 |
| Merrill Lynch Account for Keith Wilkinson, Account #594-02890 | $15,000.00 wired on 5/12/2017 | JP Morgan Bank account for Nguyet Nguyen |
| Merrill Lynch Account for Keith Wilkinson, Account #594-02890 | $25,000.00 wired on 5/17/2017 | Merrill Lynch account for Monica Wilkinson, account #594-30631 |

| Money Coming Out Of Merrill Lynch Accounts | Dollar Amount And Date Wired | Money Going Into Other Financial Accounts |
|---|---|---|
| Merrill Lynch Account for Keith Wilkinson, Account #594-02890 | $25,000.00 wired on 5/17/2017 | Merrill Lynch account for Monica Wilkinson, account #594-30747 |
| Merrill Lynch Account for Keith Wilkinson, Account #594-02890 | $28,000.00 wired on 5/26/2017 | Merrill Lynch account for Pamela Wilkinson, account #594-29926 |
| Merrill Lynch Account for Keith Wilkinson, Account #594-26281 | $66,382.51 wired on 9/19/2017 | Merrill Lynch account for Keith Wilkinson, account #594-02890 |
| Merrill Lynch Account for Keith Wilkinson, Account #594-26281 | $25,000.00 wired on 10/26/2017 | Iberia Bank account for Keith and Pamela Wilkinson, account #12104489881 |
| Merrill Lynch Account for Keith Wilkinson, Account #594-26281 | $25,000.00 wired on 12/12/2017 | Iberia Bank account for Keith and Pamela Wilkinson, account #12104489881 |
| Merrill Lynch Account for Keith Wilkinson, Account #594-26281 | $25,000.00 wired on 5/30/2018 | Iberia Bank account for Keith and Pamela Wilkinson, account #12104489881 |

The defendant knew the monetary transactions involved criminally derived property and all the transactions took place within the United States. The total amount of funds laundered in violation of 18 U.S.C. § 1957 was $347,844.62.

### III. POSSESSION WITH INTENT TO DISTRIBUTE CONTROLLED DANGEROUS SUBSTANCES

During the course of the conspiracy, **WILKINSON** and his conspirators filled prescriptions for CDS and dispensed CDS knowing some prescriptions were forged by medical personnel and others who had no authority to write prescriptions or were written by "pill mill" doctors. Therefore, the prescriptions written and the opioids dispensed were done so outside the scope of professional practice and not for a legitimate medical purpose.

The government has identified, interviewed, and in some cases prosecuted conspirators who would have testified, had this case proceeded to trial, that **WILKINSON** filled or had others fill prescriptions knowing them to either be forgeries or to have been written by physicians who were acting outside the scope of accepted medical practice when the prescriptions were written.

3

**WILKINSON** also counselled both physicians and customers on steps they should take to avoid being detected as being engaged in criminal activity in connection with both forged prescriptions and prescriptions that were written when there was no legitimate medical need for the prescriptions. He also advised certain doctors not to write prescriptions for certain combinations of pharmaceutical drugs, known as the "trinity," to avoid raising a drug diversion red flag to the DEA. He also instructed drug abusers as to how they should write forged prescriptions to avoid detection.

**WILKINSON** and an associate pharmacist personally received forged prescriptions with them listed as the patients. They filled the prescriptions at WFP, at times using fictitious profiles, and ultimately one pharmacist illegally sold the drugs for profit and the other pharmacist consumed some of the drugs. Both pharmacists also assisted "diversion" customers by sending them to known "pill mill" doctors for opioid prescriptions, and thereafter, filled those prescriptions at WFP.

In summary, **WILKINSON** and certain staff at WFP were filling a large number of opioid related prescriptions written often by "pill mill" doctors or forged by co-conspirator medical staff and their associates at the "pill mill" clinics. The number of opioid prescriptions filled at WFP were approximately twenty times greater than either the national or Louisiana average for opioid prescriptions filled by pharmacies. WFP filled these prescriptions with the assistance of wholesale pharmaceutical distributor principals who ignored the diversion drug indicators while willfully assisting **WILKINSON** by supplying these opioids and concealing the clandestine nature of his pharmacy practice from law enforcement and other regulators.

### IV. DRUG QUANTITY DETERMINATION

Although the quantity of CDS that were illegally dispensed by **WILKINSON** outside the scope of professional practice and not for a legitimate medical purpose cannot be precisely

4

determined, the government, the defendant, and the defendant's counsel all agree and stipulate that between 2013 and 2017 it was reasonably foreseeable that at least one million dosage units (tablets) of Oxycodone, a Schedule II controlled substance were dispensed by **WILKINSON** outside the scope of professional practice and not for a legitimate medical purpose during the course of the charged conspiracy.[1]

The parties further agree that **WILKINSON's** charged conduct as a pharmacist at WFP was outside the scope of professional practice and not for a legitimate medical purpose for those patients who were prescribed Schedule II through V controlled dangerous substances. However, there were some customers that received CDS from **WILKINSON** at WFP that were prescribed and dispensed for a legitimate medical purpose.

## V. AGGRAVATING FACTORS

The government and the defendant agree that two aggravating factors exist in this case:

A. **WILKINSON** was an organizer of more than five (5) persons including himself during the conspiracy charged in count 1.

B. During the course of the conspiracy contained in count 1, **WILKINSON** abused a position of trust and used a specialized skill as a pharmacist in perpetrating these crimes.

## VI. LIMITED NATURE OF THIS FACTUAL BASIS

This proffer of evidence is not intended to constitute a complete statement of all facts known by **WILKINSON,** and described by **WILKINSON** to the government, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for

---

[1] The milligram per unit value is unknown because the actual pills and/or prescriptions for these pills cannot be identified.

**WILKINSON's** plea of guilty to the two charged offenses contained in Counts 1 and 2 of the Bill of Information.

## VII. CONCLUSION

Should this case proceed to trial, the government would prove all of the forgoing by calling as witnesses DEA and IRS agents, offer pertinent video/audio recordings from documenting overt acts of the conspiracy and offering testimony from agents during surveillance of overt acts during the conspiracy. The government would offer the testimony of certain former employees of WFP who would provide testimony that **WILKINSON** conspired with them and others in specific instances to illegally dispense controlled substances. Several of the former clinic employees who would be called to testify were both eyewitnesses and participants to certain overt acts of the conspiracy.

The government would also call as witnesses DEA special agents, task force officers, and surveillance team members who monitored **WILKINSON**, co-conspirators, and their illegal transactions during the course of the investigation. The government would offer a representative sample of **WILKINSON's** pharmacy records showing the existence of the conspiracy, seized pursuant to federal search warrants, executed in April 2017. Summary charts would be offered to show a pattern of illegal CDS dispensing by **WILKINSON** over time.

The government would offer the testimony of at least one expert witness pharmacist who would offer the opinion that **WILKINSON** and other co-conspirators engaged in the illegal filling of prescriptions and dispensing of Schedule II oxycodone as charged in the Bill of Information.

In support of the charged money laundering offense in Count 2, the government would offer all relevant bank and financial records and the testimony of an accounting expert.

_____  9/3/19
KEITH WILKINSON         Date
Defendant

_____  9/3/19
PAUL TABARY             Date
Attorney for Defendant

_____  9-3-19
PATRICK FANNING         Date
Attorney for Defendant

_Kathryn McHyl_ AUSA for  9/3/19
JOHN F. MURPHY          Date
Assistant United States Attorney